## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| RONALD LECH II, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RONALD LECH III, on behalf of himself and all others similarly situated, | Case No.: 8:19-cv-2983-T-35TGW |
| Plaintiff, | **DEFENDANT STATE FARM LIFE INSURANCE COMPANY'S AMENDED ANSWER TO AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| STATE FARM LIFE INSURANCE COMPANY, | |
| Defendant. | |

Defendant State Farm Life Insurance Company ("State Farm" or "Defendant") hereby responds and answers the allegations of Plaintiff's putative Amended Class Action Complaint. Except as expressly admitted in this Amended Answer below, State Farm denies all of the Plaintiff's allegations.

### NATURE OF THE ACTION

1.      This is a class action brought on behalf of Plaintiff and similarly situated holders of universal life insurance policies issued by State Farm and its predecessors in interest issued using FORM-94030 (the "Subject Policies").

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 pursuant to claims based on the referenced policies, but denies that the case meets the requirements for certification of a class and expressly denies that any policy other than the policy issued to named Plaintiff Ronald Lech III (the "Lech Policy") is properly at issue in this case.

2.      Plaintiff seeks to represent a class of Florida consumers who own or owned a Subject Policy and who have been forced to pay unlawful and excessive cost of insurance ("COI")

charges to State Farm or its predecessors in interest (the "Class"). Defendant has caused material harm to Plaintiff and the proposed class by improperly draining monies they have accumulated in the Subject Policies.

ANSWER:   Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 pursuant to claims based on the referenced policies, but denies that the case meets the requirements for certification of a class and expressly denies that any policy other than the Lech Policy is properly at issue in this case. Except as expressly admitted, all remaining allegations of paragraph 2 of the Amended Complaint are denied.

3.      Plaintiff's claims and those of the proposed class are exclusively supported by the plain language of the Subject Policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale. Indeed, the Subject Policies are form contracts, and Plaintiff and the Class did not—and were not able to—negotiate any of the terms in these contracts.

ANSWER:   Defendant denies these allegations.

4.      The Subject Policies "unbundle" the various charges and credits charged to the policy owner; that is, the monthly deductions are broken down into an array of discrete charges and credits.[1] State Farm is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of the Subject Policies.

ANSWER:   Defendant denies the allegations of the first sentence of paragraph 4. Defendant admits that it is authorized to make deductions and apply charges permitted by the Plaintiff's Policy but otherwise denies the allegations of the second sentence of paragraph 4. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 4.

---

[1] *See* Dictionary of Insurance Terms at 550 (6th ed. 2013) (defining UL policies as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed"); *see also id*. at 557–58.

5.      Despite unambiguous policy language in a fully integrated agreement, State Farm deducts monthly COI charges from the Subject Policies in excess of amounts specifically permitted by the terms of those policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: invest through the Subject Policies; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

ANSWER:      Defendant denies these allegations.

6.      The plain language of the Subject Policies establishes that the COI charge is used to cover the insurer's mortality risk (*i.e.*, the expected probability that the insured will die in a given policy year).[2]  The fact that the COI charge is intended to reflect the insurer's mortality risk (and not its profit) is also established by the fact that these policies contain a separate line item for the "Expense Charge" to be paid by the insurer [sic] to State Farm.

ANSWER:      Defendant denies these allegations.

7.      Because COI charges are intended to compensate the insurer for mortality risk, insurers—including State Farm and its predecessors in interest—are contractually obligated to compute these charges based on their expectations of future mortality, not their desire to garner a greater profit on the Subject Policies. Thus, when mortality rates are projected to decline because life expectancy is *increasing*, insurers are required to reduce their COI charges. Conversely, when mortality rates are projected to go up because life expectancy is *decreasing*, insurers may increase their COI charges, subject to certain requirements and constraints (*e.g.*, the "maximum monthly cost of insurance rates").

ANSWER:      Defendant denies these allegations.

---

[2] For that reason, it is commonly referred to in the industry as the "mortality charge" or the "pure cost of protection."

8.      That mortality expectations have improved significantly over the past several decades is now well-documented, and this trend is widely projected by the life insurance industry to continue. Notwithstanding the substantially improved mortality expectations, State Farm breached its contracts with Plaintiff and the Class and abused its contractual discretion by not reducing its COI charges.

ANSWER:    Defendant admits that mortality expectations have improved for some groups of insureds over some periods of time since Plaintiff's policy was issued. Except as expressly admitted, Defendant denies the remaining allegations in paragraph 8.

9.      Policyholders' comfort with this arrangement is due to their trust—and the insurer's contractual commitment—that the insurer will dutifully decrease COI charges to reflect improved life expectancy (*i.e.*, reduced projected mortality).

ANSWER:    Defendant lacks knowledge sufficient to form a conclusion as to the truth or falsity of these allegations regarding "Policyholders' comfort". Defendant expressly denies that the Plaintiff's Policy imposes any obligation to decrease the COI rates used to calculate the cost of insurance and denies the remaining allegations in paragraph 9. Defendant further denies that any policy other than that issued to Plaintiff Lech is properly at issue in this case. Defendant specifically denies that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

10.     State Farm, however, has been abusing this trust and breaching its contractual commitment by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates. These breaches allowed State Farm to convert COI charges from a cost-recovery mechanism into a profit vehicle. By retaining the difference between its projected mortality expenses and the COI

charges incurred by Plaintiff and the Class, State Farm has earned tens—if not hundreds—of millions of dollars in extra profit.

ANSWER:    Defendant denies these allegations.

## THE PARTIES

11.    Plaintiff Lech Estate is the estate of Ronald Lech III, formerly of Birmingham, MI. Plaintiff entered into a Subject Policy with State Farm (Policy No. LF-2033-9948) with an initial face value of $50,000 that became effective on October 20, 2002 (the "Lech Policy"). Ronald Lech III passed away on June 5, 2007, and State Farm paid $54,174.39, which was the amount payable at the time of Mr. Lech's death with interest; this payment did not release State Farm from liability for the claims alleged herein. Mr. Lech was both the "owner" and the "insured" under the Lech Estate Policy. State Farm was the effective and liable insurer of the Lech Policy, and to Plaintiff Lech Estate's knowledge, State Farm has never reduced the COI charges it deducts from this policy. A copy of the Lech Policy[3] is attached hereto as **Exhibit A**.[4]

Answer:    Defendant lacks sufficient information to form a belief as to the truth of the first sentence of paragraph 11. Defendant admits that it issued a policy identified by the policy number LF-2033-9948 to Ronald Lech III but denies the remaining allegations of the second sentence of paragraph 11.  Defendant admits that it paid $54,174.39 upon the death of Mr. Lech III, but denies the remaining allegations of the third sentence of paragraph 11.  Defendant admits that Mr. Lech III was the owner and the insured under the Lech Policy, but denies the remaining allegations of the fourth sentence of paragraph 11.  Defendant admits that it was the insurer on the Lech Policy, but denies the remaining allegations of the fifth sentence of paragraph 11. Defendant

---

[3] Because the named Plaintiff's UL policy is a Subject Policy, references herein to the Subject Policies refer jointly to the Plaintiff's Policy and the Subject Policies held by the Class.

[4] Sensitive personal and health information has been redacted from the Exhibit attached hereto.

admits that a copy of the Policy with portions of the application redacted is attached to Plaintiff's Amended Complaint. Except as expressly admitted, State Farm denies all remaining allegations contained in paragraph 11.

12.     Defendant State Farm is a life insurance company organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Bloomington, Illinois. Defendant is authorized to transact business within the state of Florida.

ANSWER:     Defendant admits these allegations.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

ANSWER:     The allegations of this paragraph state a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that the case meets the requirements for certification of a class and denies that the amount in controversy for any individual claim exceeds $5,000,000 or $75,000. Except as expressly admitted, State Farm denies all remaining allegations contained in paragraph 13.

14.     This Court has personal jurisdiction over State Farm because it is licensed to sell insurance in this District and because it sold the Subject Policies to residents of this District, including to Mr. Lech.

ANSWER:     The allegations of this paragraph state a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant admits

the allegation of jurisdiction as to Plaintiff's claims. Except as expressly admitted, State Farm denies all remaining allegations contained in paragraph 14.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to Mr. Lech's cause of action primarily occurred in this District.

ANSWER:     The allegations of this paragraph state a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant admits the allegation of venue as to Plaintiff's claims. Except as expressly admitted, State Farm denies all remaining allegations contained in paragraph 15.

## FACTUAL ALLEGATIONS

### The Subject Policies

16.     State Farm issued the Subject Policies in the United States using standardized contracts noted as FORM-94030 between roughly January 1, 1994 and June 30, 2004. On information and belief, State Farm continues to accept payments on the '94 Policy from roughly 540,000 policyholders in the United States.

Answer:     Defendant admits that it offered life insurance on policy form 94030 to new policyholders beginning on January 1, 1994 and ceased offering life insurance on policy form 94030 to new policyholders on June 30, 2004.  Defendant further admits that premium payments on the Lech Policy were accepted and processed pursuant to the terms of Policy LF-2033-9948. Defendant denies the remaining allegations of paragraph 16. Defendant denies that this case is suitable for treatment as a class action and that any policy other than Policy LF-2033-9948 is at issue in this case. Except as expressly admitted, State Farm denies all remaining allegations contained in paragraph 16.

17.     Owners of the Subject Policies were not permitted to negotiate any of the terms; the terms of the Subject Policies are not subject to individual negotiation and are materially the

same across the Class. They cannot be altered by an agent's representations at the time of sale, and any endorsements, amendments, or riders must be signed by an officer to be valid.

ANSWER:     Defendant admits that endorsements, amendments, or riders must be signed by an officer to be valid but denies the remaining allegations of the first sentence of paragraph 17. Defendant denies that this case is suitable for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 17.

18.     State Farm has administered and currently administers all aspects of Subject Policies. In this capacity, State Farm has (and continues to) collected premiums and set, assessed, and deducted policy charges, including the COI charge, on the Subject Policies.

ANSWER:     Defendant admits that it administered the Lech Policy pursuant to the Policy terms.  Defendant admits that it accepted premiums paid on the Lech Policy pursuant to the Policy terms.  Defendant denies that it set, assessed, and/or deducted policy charges, as the policy charges are affected by policyholder behavior pursuant to the terms of the policies. Defendant denies that this case is suitable for treatment as a class action and denies that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations of paragraph 18.

19.     Unlike standard term life insurance policies, the Subject Policies provide policy holders an investment, savings, or interest-bearing component. The Subject Policies refer to this component as "Cash Value," "Account Value," or something similar.[5]

---

[5] This Complaint refers to this component as the "Cash Value," but regardless of the specific terminology used, the purpose of this component is the same in each of the Subject Policies.

Answer:        Defendant admits that Form 94030 has a feature referred to as Account Value[6], which is a number calculated according to the terms of the policy form. Defendant denies that this case is suitable for treatment as a class action and that any policies other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations contained in paragraph 19.

20.        Under the terms of the Subject Policies, the policy owners make premium payments to State Farm, and State Farm deducts the monthly charges authorized by the policies. The remaining amount is then deposited into the Cash Value, which consists of an interest-bearing account that accumulates over time.

Answer:        Defendant admits that policy owners can make premium payments to State Farm and that State Farm is authorized to make deductions and apply charges permitted under the terms of policy Form 94030.  Defendant admits that Form 94030 provides that 95 percent of premiums received will be added to the "Account Value" but denies that "the remaining amount is then deposited into the Cash Value."  Defendant admits that interest is credited to the "Account Value" as provided in Form 94030 but denies that the "Cash Value" is an "account" that has any independent meaning outside of the operation of the Lech Policy as a whole. Defendant denies that this case is suitable for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations contained in paragraph 20 of Plaintiff's Amended Complaint.

---

[6] In its responses, Defendant will refer to the "Account Value" when referencing the feature as used in Form 94030, and will refer to the feature as "Cash Value" if quoting Plaintiff's allegations because that is the terminology for this feature that Plaintiff uses.

21.     The funds in the Cash Value belong to the policy owner. State Farm holds these funds in trust for the policy owners and may only access or withdraw these funds as expressly authorized by the Subject Policies.

ANSWER:     Defendant denies these allegations.

22.     The Subject Policies, including the Plaintiff's Policy (Ex. A at 9), authorize State Farm to take a "Monthly Deduction" from the Cash Value of each policy each month. The Subject Policies expressly define the Monthly Deduction as follows:

> **Monthly Deduction**. This deduction is made each month, whether or not-premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
> (1)   the cost of insurance,
> (2)   the monthly charges for any riders, and
> (3)   the monthly expense charge.

ANSWER:     Defendant admits that it makes a monthly deduction from the Account Value on each monthly deduction date to the extent provided by the terms of each policy issued on Form 94030. Defendant admits the quoted language in paragraph 22 is an excerpt of a provision of Form 94030 captioned "Monthly Deduction" but denies that the language can be properly considered outside of the context of the Policy as a whole.  Defendant also denies that this case is suitable for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies the remaining allegations of paragraph 22.

23.     The Subject Policies, including Plaintiff's Policy, set the "monthly expense charge" at a specific dollar amount. In the case of the Plaintiff's Policy, the expense charge is set at $5.00. See Ex. A at 3.

ANSWER:     Defendant admits that Policy LF-2033-9948 authorizes a "monthly expense charge" and refers to the Policy for the terms thereof.  State Farm denies that this case is suitable

for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies the remaining allegations of paragraph 23 of Plaintiff's Amended Complaint.

24.    The Subject Policies, including Plaintiff's Policy (Ex. A at 10), also expressly define how the COI charge is determined and calculated:

> **Cost of Insurance**. This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
>
> (1)    is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
>
> (2)    is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
>
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

ANSWER:    Defendant admits the quoted language in paragraph 25 of Plaintiff's Amended Complaint is an excerpt of a provision of Policy LF-2033-9948 captioned "Cost of Insurance" but denies the allegations contained in paragraph 24 of Plaintiff's Amended Complaint because the quoted language cannot be properly considered outside of the context of the Policy as a whole.  Defendant also denies that this case is suitable for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations of paragraph 24 of Plaintiff's Amended Complaint.

25.    The Subject Policies, including Plaintiff's Policy (Ex. A at 10), explicitly establish the factors State Farm may use to determine "Monthly Cost of Insurance Rates" (the "COI Rates"), which are in turn used to calculate the COI charge (as set forth above) that is deducted from the Cash Value each month:

> **Monthly Cost of Insurance Rates**. These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Answer:       Defendant admits the quoted language is an excerpt of a provision of Policy LF-2033-9948  captioned "Monthly Cost of Insurance Rates" but denies that the Policy "explicitly establish[es] the factors State Farm may use to determine" cost of insurance rates and further denies the allegations contained in paragraph 25 because the quoted language cannot be properly considered outside of the context of the Policy as a whole.  Defendant further denies that this case is suitable for treatment as a class action and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies the allegations contained in paragraph 25 of Plaintiff's Amended Complaint.

26.    Thus, under the explicit terms of the Subject Policies, State Farm is authorized only to use the Insured's age, sex, applicable rate class, and projected changes in mortality when determining the Subject Policies' COI Rates.

ANSWER:     Defendant denies these allegations.

27.    Indeed, State Farm has previously admitted that a rate "based on" factors explicitly identified in the Subject Policies must be determined using only those identified factors. For example, in *Alleman v. State Farm Life Insurance Co*., 334 Fed. App'x 470, 472 (3rd Cir. 2009), the court affirmed summary judgment in State Farm's favor and rejected the plaintiff's argument that a provision in a life insurance policy stating that a charge would be "based on the Insured's age last birthday and sex" should be read to include other undisclosed factors because, "[b]y the

plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to that rate . . . ."

ANSWER:     This allegation sets forth a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, Defendant denies the allegation as to what State Farm purportedly "admit[ted]" in *Alleman* and denies that the Amended Complaint accurately characterizes either State Farm's statements or the decision in *Alleman*.  Defendant denies that the *Alleman* case is controlling on any issue before the Court in this case.

28.     Recently, the United States District Court for the Western District of Missouri, reviewing the language in a later issued policy that is identical to the language at issue here, determined that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance. While an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, ***a lay person would not understand that State Farm expected to derive profit from the COI***." *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("*Vogt*") (emphasis added).

ANSWER:     This allegation sets forth a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, Defendant denies that the *Vogt* case is controlling on any issue before the Court in this case.

29.     As the above establishes, the "Expense Charge" and the "charges for any riders" are the only means by which State Farm was contractually permitted to earn a profit margin on the Subject Policies; the cost of insurance charge was only intended to reimburse State Farm for its mortality risk.

ANSWER:     This allegation sets forth a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant denies these allegations.

**B.    State Farm, in Breach of its Contracts with Plaintiff and the Class, Considered Impermissible Factors in Setting the COI Rates**

30.    Age, sex, and rate class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

ANSWER:     Defendant admits that age and sex are factors that can relate to mortality expectations.  Defendant denies the remaining allegations.

31.    An insured would reasonably read age, sex, and rate class, in combination with the disclosure that rates can only be adjusted for "projected changes in mortality," and understand that only mortality expectations are used to determine COI Rates.

ANSWER:     Defendant denies these allegations.

32.    By specifically identifying age, sex, and rate class as the defining components of the COI Rate, Plaintiff and the Class, on the one hand, and State Farm, on the other, agreed that mortality expectations are what determines the COI Rates under the Subject Policies. This is further confirmed where the Subject Policies states that "[s]uch rates can be adjusted for projected changes in mortality." Ex. A at 10.

ANSWER:     Defendant denies these allegations, denies that COI rates have "components," and denies that any policy other than Policy LF-2033-9948 is properly at issue in this case.

33.    Notwithstanding the clear terms of the Subject Policies limiting the factors State Farm may consider in determining the COI Rates, State Farm uses other factors, which are not authorized by the Subject Policies, when determining these rates, including but not limited to the following:

a.     Expense experience;

b.     Persistency;

c.     Taxes;

d.     Profit assumptions;

e.     Investment earnings;

f.     Capital and reserve requirements; and

g.     Other unspecified factors.

ANSWER: Defendant denies these allegations and further denies that any policy other than Policy LF-2033-9948 is properly at issue in this case.

34.     By including these impermissible factors in the calculation of its COI Rates, State Farm knowingly caused the COI Rates to be higher than what is explicitly authorized under the terms of the Subject Policies, thereby assessing COI charges to the owner's premiums in amounts greater than those authorized in the Subject Policies. This reduced the monies deposited into the Cash Accounts (which also reduced the amount of money earning interest), causing a substantial financial injury to Plaintiff and the Class.

ANSWER:     Defendant denies these allegations.

35.     As an additional consequence of State Farm knowingly charging COI Rates higher than what was authorized by the Subject Policies, the Cash Values of some Class members were so depleted that State Farm cancelled their policies, thereby depriving them of their insurance proceeds (even after years of payment).

ANSWER:     Defendant denies these allegations, specifically denies that State Farm "cancelled" policies, and further denies that any policy other than the Lech Policy is properly at issue in this case.

36.     As a direct and proximate result of State Farm's breach, Plaintiff and the Class have been damaged and those damages are continuing in nature in that State Farm has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values of Plaintiff and the Class in amounts not authorized by the Subject Policies.

ANSWER:     Defendant denies these allegations and further denies that any policy other than the Lech Policy is properly at issue in this case.  Defendant specifically denies that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

## C.     State Farm, in Breach of its Contracts with Plaintiff and the Class and the Implied Covenant of Good Faith and Fair Dealing, Failed to Reduce its COI Charges

37.     The above language contractually requires State Farm to reduce its COI rates when its expectations of future mortality improve.

ANSWER:     Defendant denies these allegations.

38.     As shown below, State Farm, in breach of its contracts with Plaintiff and the Class, did not do so.

ANSWER:     Defendant denies these allegations and further denies that any policy other than the Lech Policy is properly at issue in this case.  Defendant specifically denies that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

39.     That monthly COI rates are based on sex, age, and rate class means that State Farm was required to determine the COI rates by reference to mortality tables. Mortality tables are charts showing the rate of death (either as a percentage or as the number of deaths per thousand individuals) at a given age. There are separate mortality tables for males and females, tobacco-use,

underwriting status, and duration since underwriting. Actuaries and insurers use mortality tables to calculate insurance rates and are intended to reflect expectations of future mortality.

ANSWER:    The allegations of the first sentence of paragraph 39 set forth a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant denies the allegations of the first sentence of paragraph 39 to the extent they suggest that State Farm was prohibited from considering information other than "mortality tables" in developing COI rates for use with the Lech Policy. Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations because there are many types of "mortality tables" that may contain historical or expected future mortality rates for various groups defined in various ways and used by various insurers in differing ways for various purposes.

40.    Beginning at least as early as 1941, the National Association of Insurance Commissioners ("NAIC") has periodically issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in UL policies.

ANSWER:    Defendant admits that the National Association of Insurance Commissioners ("NAIC") has published various tables at various times that are referred to as Commissioners' Standard Ordinary mortality tables and that some such tables have been commonly used by insurers to calculate reserves for the purpose of statutory accounting statements. Defendant admits that it has used certain of such tables in developing maximum cost of insurance rates for various universal life insurance policies. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 40, and thus Defendant denies all remaining allegations in paragraph 40 of Plaintiff's Amended Complaint.

41.     The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001.

ANSWER:     Defendant admits that the NAIC published various tables in 1980 referred to as Commissioners' Standard Ordinary mortality tables and that these tables included a 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table.  Defendant also admits that the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table was an industry-standard table until 2001.  Except as expressly admitted, Defendant denies all remaining allegations in paragraph 41 of Plaintiff's Amended Complaint.

42.     In 2001, at the request of the NAIC, the Society of Actuaries ("SOA") and the American Academy of Actuaries (the "Academy") produced a proposal for a new CSO Mortality Table. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued. The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[7] The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."

---

[7] *Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force*, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, available at http://www.actuary.org/pdf/life/cso2_june01.pdf.

ANSWER:     Defendant admits that the statements contained in paragraph 42 of Plaintiff's Amended Complaint appear to cite or characterize a June 2001 report from the American Academy of Actuaries' CSO Task Force to the NAIC Life and Health Actuarial Task Force and that the report contains the language quoted in paragraph 42 of Plaintiff's Amended Complaint. The report is the best evidence of its contents, and, except as expressly admitted, Defendant does not admit the truth of the contents of the report. Defendant lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 42, and, except as expressly admitted, Defendant denies the remaining allegations of paragraph 42 of Plaintiff's Amended Complaint.

43.     This means the tables are showing a substantial improvement in mortality in a 20-year time-period. These mortality improvements represent a substantial benefit that State Farm should have passed on to Plaintiff and the Class. The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table"). The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

ANSWER:     Defendant admits that the NAIC adopted the 2001 Commissioners Standard Ordinary Mortality Table and that it is sometimes referred to as the 2001 CSO Mortality Table. The report, including tables therein, is the best evidence of its contents, and, except as expressly admitted, Defendant does not admit the truth of the contents of the report. Defendant denies the remaining allegations in paragraph 43 of Plaintiff's Amended Complaint.

44.     Since the 2001 CSO Mortality Table was published, the SOA and the Academy have periodically published, from surveys of life insurers, new tables showing consistent and significant mortality improvement. For example, the Academy's 2015 report observed: "The

current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. *Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development.*"[8]

ANSWER:    Defendant admits the above quote accurately sets forth language contained in the Academy's 2015 Report but denies the remaining allegations of paragraph 44 of Plaintiff's Amended Complaint.

45.    Other surveys of insurers conducted by the SOA between 2002 and 2009 also show that mortality has steadily decreased since issuance of the 2001 CSO Mortality Table. For instance, the SOA published Individual Life Experience Reports for the periods 2002-2004,[9] 2005-2007,[10] 2008-2009,[11] and 2009-2013,[12] each of which showed strong rates of improvement in mortality. State Farm was one of the surveyed companies included in each of these studies.

---

[8] Am. Academy of Actuaries, *Report on the 2017 CSO and 23017 CSO Preferred Structure Table Development* (Oct. 2018), https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf (emphasis added).

[9] Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality under Standard Individually Underwritten Life Insurance Between 2002 and 2004 Policy Initiatives* (Dec. 2004), https://www.soa.org/resources/experience-studies/2005-2009/02-04-iindividual-life-exp-rpt/.

[10] Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality for Standard Individually Underwritten Life Insurance Between 2005 and 2007 Policy Anniversaries* (Feb. 2010), https://www.soa.org/resources/experience-studies/2010/2005-2007-ind-life-report/.

[11] Society of Actuaries, *2008-09 Report of the Individual Life Insurance Experience Committee* (April 2013), https://www.soa.org/experience-studies/2017/2009-13-indiv-life-ins-mort-exp/.

[12] Society of Actuaries, *2009-2013 Individual Life Insurance Mortality Experience Report* (Oct. 2017), https://www.soa.org/experience-studies/2013/research-2008-2009-ind-life-exp/.

ANSWER:     Defendant admits that the Society of Actuaries ("SOA") has conducted several surveys of varying numbers of life insurance companies with respect to mortality experience, including the following: 2002-04 Individual Life Experience Report, 2005-07 Individual Life Experience Report, 2008-09 Individual Life Experience Report, and 2009-2013 Individual Life Insurance Mortality Experience Report. The reports are the best evidence of their contents, and, except as expressly admitted, Defendant does not admit the truth of the contents of the reports. Defendant admits that there are surveys that have noted mortality improvements for some groups over some periods. State Farm admits that it is listed as one of the companies surveyed in the 2002-04 Individual Life Experience Report, the 2005-07 Individual Life Experience Report, and the 2008-09 Individual Life Experience Report.  Except to the extent expressly admitted, Defendant denies the remaining allegations in paragraph 45 of Plaintiff's Amended Complaint.

46.     The SOA also periodically publishes updated mortality tables that reflect insurers' changing experience, including (a) 1990-95 Basic Select and Ultimate Mortality Tables;[13] (b) 2001 Valuation Basic Mortality Table;[14] (c) 2008 Valuation Basic Table;[15] and (d) 2015 Valuation Basic Table.[16] Consistent with the foregoing, these tables confirm that mortality continued to improve substantially since issuance of the Subject Policies.

---

[13] Society of Actuaries, *1990-95 Basic Select and Ultimate Mortality Tables for Individual Life Insurance*, https://www.soa.org/experience-studies/2000-2004/90-95-basic-select/.

[14] Society of Actuaries, *Final Report of the Individual Life Insurance Valuation Mortality Task Force 2001 – Valuation Basic Mortality Table [2001 VBT]* (April 2005), https://www.soa.org/experience-studies/2005-2009/final-report-life-insurance-valuation/.

[15] Society of Actuaries, *2008 Valuation Basic Tables [VBT] Report* (June 16, 2009), https://www.soa.org/experience-studies/2005-2009/2008-vbt-report-tables/.

[16] Society of Actuaries, *2015 Valuation Basic Report and Tables* (Sept. 13, 2018), https://www.soa.org/experience-studies/2015/2015-valuation-basic-tables/.

ANSWER:     Defendant admits that the SOA has published a variety of mortality tables over the past several decades. Such tables are the best evidence of their contents, and, except as expressly admitted, Defendant does not admit the truth of the contents of the tables. Defendant admits that there are some tables that show mortality improvements for some groups over some periods. Defendant admits that, in investigating Plaintiff's allegations, it identified what appear to be multiple documents to which Plaintiff may be referring in paragraph 46, but Defendant lacks knowledge to identify which document or documents Plaintiff references in this paragraph and therefore lacks knowledge or information sufficient to form a belief about the remaining allegations contained in paragraph 46 of Plaintiff's Amended Complaint. Except as expressly admitted, Defendant denies the remaining allegations in paragraph 46 of Plaintiff's Amended Complaint.

47.     Other surveys have also noted significant improvements in mortality expectations. In May of 2013, for instance, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages.[17] This study, which was based on a survey of insurance companies—including State Farm—showed material rates of mortality improvements. As another example, in March 2014 the actuarial firm Milliman published a report sponsored by the SOA—also based on a survey of insurance companies that included State Farm—called the "Select Period Mortality Survey," that also showed that select rates of mortality improved significantly since 2001.[18]

---

[17] Tim Rozar, Catie Muccigrosso, Susan Willeat, RGA, *Report on the Survey of Older Age Mortality and Other Assumptions* (May 2013), https://www.rgare.com/docs/default-source/default-document-library/older-age-mortality.pdf?sfvrsn=dc9ad888_0.

[18] Allen M. Klein, Michelle L. Krysiak, Milliman, *Select Period Mortality Survey* (March 2014), available at https://www.soa.org/research-reports/2014/research-2014-select-period/.

ANSWER:    Defendant admits that RGA published a report named "Report on the Survey of Older Age Mortality and Other Assumptions," that "May 2013" appears on the title page of the report, and that State Farm is listed as a participant in the survey.  Defendant further admits that Milliman published a report named "Select Period Mortality Survey" and that "March 2014" appears on its title page.  The reports are the best evidence of their contents and, except as expressly admitted, Defendant does not admit the truth of the contents of the reports.  Except as expressly admitted, Defendant denies the remaining allegations in paragraph 47 of Plaintiff's Amended Complaint.

48.    These mortality improvements since issuance of the Subject Policies represent a substantial financial benefit to State Farm in the form of decreased costs of providing insurance.

ANSWER:    Defendant denies these allegations.

49.    State Farm was contractually required to share this financial benefit with holders of the Subject Policies through decreased COI charges on the Subject Policies, but failed to do so.

ANSWER:    Defendant denies these allegations.

50.    At a minimum, State Farm abused its contractual discretion by failing to do so. Indeed, the Subject Policies provide: "[The COI] can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." State Farm is therefore vested with contractual discretion to adjust COI based on "changes in mortality." It abused its contractual discretion by failing to adjust its COI in response to mortality improvements.

ANSWER:    Defendant admits only that the Policy provides: "[The COI rates] can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates," but denies the remaining allegations.  The Policy speaks for itself and Defendant refers to the Policy for the terms thereof.  Further, Defendant specifically denies that this action is proper for class certification and that any policy other than the Lech Policy is at issue. Except as

expressly admitted, Defendant denies all remaining allegations in paragraph 50 of Plaintiff's Amended Complaint.

**D.     State Farm Concealed its Wrongdoing**

51.     Because State Farm did not disclose its mortality expectations or the monthly COI Rates it used to calculate the COI charges, Plaintiff and the Class could not have discovered State Farm's breach of the Subject Policies until recently.

ANSWER:     Defendant denies these allegations. Defendant further denies that any policy other than the Lech Policy is properly at issue in this case and specifically denies that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

52.     Moreover, the nature of Defendant's conduct is such that Plaintiff and each member of the Class would be, and Plaintiff indeed was, unaware that State Farm was engaging in wrongdoing by taking inflated charges and improper amounts from Cash Values and failing to reduce COI rates in light of the substantial improvements in mortality rates. Plaintiff and the Class were automatically assessed inflated COI charges, but they were not privy to the back-end calculations that caused these charges to be inflated. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Subject Policies. The COI Rates actually used to calculate the COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiff and the Class would lack the knowledge, experience, and training to reasonably ascertain how State Farm calculated the rates and charges.

ANSWER:     Defendant denies these allegations.  Defendant further denies that any policy other than the Lech Policy is properly at issue in this case and specifically denies that this

case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

53.     State Farm was aware of its non-disclosure because of its superior knowledge of the aforementioned computations. As the only party with access to the actuarial information and equations for computing COI Rate, State Farm successfully concealed the information that led to this cause of action. The means by which State Farm fraudulently concealed the information included stating in the Subject Policies that COI Rates are "based on the Insured's age on the policy anniversary, sex, and applicable rate class." Plaintiff exercised reasonable care and diligence with regard to his Subject Policy but had no reason to believe State Farm was not computing his COI Rate as it said it would in the information it provided to Plaintiff and the Class. Concealment of its conduct and failure to disclose its conduct to Plaintiff and the Class constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff and the Class.

ANSWER:     Defendant denies these allegations.   Defendant further denies that any policy other than the Lech Policy is properly at issue in this case and specifically denies that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

54.     Plaintiff did not learn of Defendant's breaches supporting Plaintiff's claims until approximately Summer 2019, when he engaged counsel. Plaintiff was not at fault for failing to discover the breaches and had no actual or presumptive knowledge of the breaches.

ANSWER:     Defendant denies these allegations.

55.     Plaintiff did not learn that State Farm was breaching the Subject Policies because the facts showing breach were not reasonably discoverable by Plaintiff nor was the harm that was caused by State Farm's breaches.

ANSWER:     Defendant denies these allegations.

## CLASS ACTION ALLEGATIONS

56.     This action is brought by Plaintiff individually and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23, but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.   Except as expressly admitted, Defendant denies all remaining allegations in paragraph 56 of Plaintiff's Amended Complaint.

57.     The Class is defined as follows:

All persons who own or owned a universal life insurance policy issued by State Farm Life Insurance Company on FORM-94030 in the State of Florida.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.   Except as expressly admitted, Defendant denies all remaining allegations in paragraph 57 of Plaintiff's Amended Complaint.

58.     Excluded from the Class is State Farm, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.   Except as expressly admitted, Defendant denies all remaining allegations in paragraph 58 of Plaintiff's Amended Complaint.

59.     *Numerosity*. The Class consists of hundreds or thousands of consumers of life insurance and is thus so numerous that joinder of all members is impracticable.

ANSWER:     Defendant denies these allegations.

60.     *Ascertainability*. The identities and addresses of all members of the Class can be readily ascertained from State Farm's business records.

ANSWER:     Defendant denies these allegations.

61.     *Typicality*. The claims asserted by Plaintiff are typical of the claims of members of the Class inasmuch as State Farm breached its contracts with Plaintiff and with members of the Class in the same manner: by considering extra-contractual factors when determining the COI charges and by failing to reduce the COI Rates to reflect falling mortality rates.

ANSWER:     Defendant denies these allegations.

62.     *Adequacy*. Plaintiff will fairly and adequately protect the interests of the members of the Class and do not have any interests antagonistic to those of the other members of the Class. In addition, Plaintiff has retained attorneys who are knowledgeable and experienced in class and complex litigation.

ANSWER:     Defendant denies these allegations.

63.     ***Commonality and Predominance***. Common questions of law and fact affecting members of the Class predominate over any individualized issues. These predominating common questions include the following:

a.     Whether State Farm is permitted by the Subject Policies to use factors other than those disclosed in the Subject Policies to determine the COI Rates used to calculate the policy deductions;

b.     Whether State Farm used, added, or included factors not specified in the Subject Policies when determining the COI Rates used to calculate the COI charges or deductions;

c.     Whether State Farm added or included factors unrelated to its mortality expectations in setting and determining rates that the Subject Policies

27

provide are "based on" specified mortality factors and no other disclosed factors;

d.  Whether State Farm's expectations as to future mortality experience have improved;

e.  Whether State Farm was required to decrease the COI Rates it imposed on Plaintiff and members of the Class in light of improved mortality;

f.  Whether State Farm breached the terms of the Subject Policies and/or abused its discretion under the Subject Policies;

g.  Whether Plaintiff and members of the Class sustained damages as a result of State Farm's breaches of the Subject Policies;

h.  Whether Plaintiff and members of the Class are entitled to damages, restitution, and/or other relief as a remedy for State Farm's breaches of the Subject Policies; and

i.  Whether Plaintiff and members of the Class are entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

ANSWER:   Defendant denies these allegations.

64.   ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.      This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.      Without a class action, many class members would continue to suffer injury, and State Farm's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

ANSWER:    Defendant denies these allegations.

65.    *Manageability*. This action does not present any undue difficulties that would impede its management by the Court as a class action.

ANSWER:    Defendant denies these allegations.

<div align="center">

**FIRST CLAIM FOR RELIEF:**
**BREACH OF CONTRACT**

</div>

66.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

ANSWER:    Defendant incorporates and restates by reference its responses to all preceding allegations.

67.    This claim is brought on behalf of Plaintiff and the Class.

ANSWER:    Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.  Except as expressly admitted, Defendant denies all remaining allegations in paragraph 67 of Plaintiff's Amended Complaint.

68.    The Subject Policies are binding and enforceable contracts.

ANSWER:      Defendant admits that the Policy is valid and enforceable.  Defendant denies that this case is appropriate for class certification or class treatment and further denies that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 68 of Plaintiff's Amended Complaint.

69.      State Farm breached its contracts with Plaintiff and the Class by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

ANSWER:      Defendant denies these allegations.

70.      By so doing, State Farm knowingly caused the COI charges to be higher than what is explicitly authorized by the Subject Policies.

ANSWER:      Defendant denies these allegations.

71.      Plaintiff and the Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by State Farm's conduct as set forth herein.

ANSWER:      Defendant denies that Plaintiff has substantially performed his obligations under the terms of the Policy. Defendant denies that this case is appropriate for class certification or class treatment and that any policy other than the Lech Policy is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 71 of Plaintiff's Amended Complaint.

72.      As a direct and proximate cause of State Farm's material breaches of the policies, Plaintiff and the Class have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

ANSWER:      Defendant denies these allegations.

## SECOND CLAIM FOR RELIEF:
## BREACH OF THE CONVENANT OF GOOD FAITH & FAIR DEALING

73.     Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

ANSWER:     Defendant incorporates and restates by reference its response to all preceding allegations.

74.     This claim is brought on behalf of Plaintiff and the Class.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.   Except as expressly admitted, Defendant denies all remaining allegations in paragraph 74 of Plaintiff's Amended Complaint.

75.     The Subject Policies are binding and enforceable contracts.

ANSWER:     Defendant admits that the Policy is valid and enforceable.  Defendant denies that this case is appropriate for class certification or class treatment and further denies that any Policy other than the Policy Plaintiff purchased is at issue in this case. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 75 of Plaintiff's Amended Complaint.

76.     Each of the contracts include an implied covenant that State Farm will act in good faith and deal fairly with Plaintiff, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

ANSWER:     This allegation sets forth a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, Defendant denies the allegations.

77.     State Farm breached the implied covenant of good faith and fair dealing with Plaintiff and the Class by not reducing its COI charges in light of the well-established decreased

mortality rates. As a consequence thereof, Plaintiff and the Class suffered financial losses and were therefore injured.

ANSWER:     Defendant denies these allegations.

78.     State Farm's decision to not reduce its COI charges in light of the well-established decreased mortality rates also frustrated the purposes of the COI charge clauses of Subject Policies, which was to reimburse State Farm for its actual mortality risk.

ANSWER:     Defendant denies these allegations.

79.     As a direct and proximate cause of these breaches of the implied covenant of good faith and fair dealing and of State Farm's frustration of the purposes of the COI charge clauses of the Subject Policies, Plaintiff and the Class have been damaged as alleged herein in an amount to be proven at trial.

ANSWER:     Defendant denies these allegations.

### THIRD CLAIM FOR RELIEF:
### CONVERSION

80.     Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

ANSWER:     Defendant incorporates and restates by reference its responses to all preceding allegations.

81.     This claim is brought on behalf of Plaintiff and the Class.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.  Except as expressly admitted, Defendant denies all remaining allegations in paragraph 81 of Plaintiff's Amended Complaint.

82.   Plaintiff and the Class had a property interest in the funds State Farm deducted from their Cash Values in excess of the amounts permitted by the terms of the Subject Policies.

ANSWER:   Defendant denies these allegations.

83.   By deducting COI Charges and Expense Charges in unauthorized amounts from the Cash Values of Plaintiff and the Class, State Farm misappropriated or misapplied specific funds placed in the custody of State Farm for the benefit of Plaintiff and the Class for use consistent with the terms of the Subject Policies, without authorization or consent, and diverted those funds for its own use.

ANSWER:   Defendant denies these allegations.

84.   As a direct and proximate result of State Farm's conduct, Plaintiff and the Class have been damaged.

ANSWER:   Defendant denies these allegations.

85.   Although requiring expert testimony, the amounts of unauthorized COI Charges and Expense Charges State Farm took from Plaintiff and the Class are capable of determination, to an identified sum, by comparing Plaintiff's actual COI Charge each month to a COI Charge computed using a Monthly COI Rate determined using the mortality factors disclosed in the Subject Policies.

ANSWER:   Defendant denies these allegations.

86.   On behalf of himself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by State Farm's conduct.

ANSWER:   Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23 but denies that this case meets the requirements for certification of a class and otherwise denies these allegations. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 86 of Plaintiff's Amended Complaint.

87.     State Farm intended to cause damage to the Plaintiff and the Class by deducting more than it was authorized to deduct from their Cash Values. Its conduct was, therefore, malicious and State Farm is also guilty of oppression in that its systematic acts of conversion subject Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

ANSWER:     Defendant denies these allegations.

## FOURTH CLAIM FOR RELIEF:
## DECLARATORY RELIEF

88.     Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

ANSWER:     Defendant incorporates and restates by reference its responses to all preceding allegations.

89.     This claim is brought on behalf of Plaintiff and the Class.

ANSWER:     Defendant admits that Plaintiff purports to bring this case as a class action under Fed. R. Civ. P. 23, but denies that this case meets the requirements for certification of a class and otherwise denies these allegations.  Except as expressly admitted, Defendant denies all remaining allegations in paragraph 89 of Plaintiff's Amended Complaint.

90.     An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and State Farm, on the other, concerning the respective rights and duties of the parties under the Subject Policies.

ANSWER:     Defendant denies these allegations.

91.     Plaintiff contends that State Farm has breached the Subject Policies in the following respects: by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

ANSWER:     Defendant admits that Plaintiff contends that State Farm has breached his Policy, but denies that there has been any breach and otherwise denies these allegations. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 91 of Plaintiff's Amended Complaint.

92.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Subject Policies and requests the Court to declare the aforementioned conduct of State Farm as unlawful and in material breach of the Subject Policies.

ANSWER:     Defendant admits that Plaintiff seeks a declaration of the parties' rights and duties, but denies that Plaintiff is entitled to any such declaration and otherwise denies these allegations. Except as expressly admitted, Defendant denies all remaining allegations in paragraph 92 of Plaintiff's Amended Complaint.

## ADDITIONAL DEFENSES

Nothing herein may be construed to suggest that State Farm bears the burden of proof on any of the issues set forth below. State Farm reserves the right to assert other defenses to the extent the factual bases for other such defenses are discovered during the course of this litigation.

## FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations. Plaintiff cannot adequately demonstrate any fraudulent concealment by Defendant or any other facts that would toll the running of the applicable statutes of limitation. To the extent the discovery rule applies to any of Plaintiff's or the putative class's causes of action, they had adequate actual or constructive knowledge (from the terms of their contracts, illustrations, annual statements, correspondence, and other written and oral communications with Defendant or third parties) to

trigger the running of the limitations period so that the applicable statutes of limitation have now expired.

## SECOND DEFENSE

Plaintiff cannot assert their untimely claims based on fraudulent concealment because: (1) Defendant had no duty to disclose the conduct of which Plaintiff complains; (2) Defendant had no intent to deceive any policyholder; and (3) Plaintiff has not alleged fraud with the particularity required by Rule 9(b) of the Rules of Civil Procedure.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and/or estoppel. Plaintiff received the entire benefit of the bargain and cannot now mount a claim for breach.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's own actions, negligence or legal fault.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by their failure to mitigate damages, if any.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by payment or the voluntary payment doctrine.

## EIGHTH DEFENSE

Plaintiff's claims and those of the persons they purport to represent are barred by the filed rate doctrine. The policy forms at issue were filed with and/or approved by state regulatory authorities.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## TENTH DEFENSE

Claims of some members of the putative classes are barred by or otherwise did not survive the surrender or termination of the policy.

## ELEVENTH DEFENSE

Claims of the Plaintiff and some members of the putative classes are barred by or otherwise did not survive either the death of the owner of the Policy or the death of the insured.

## TWELFTH DEFENSE

Claims of the Plaintiff and the putative classes are preempted by the insurance regulations and statutes of Florida.

## THIRTEENTH DEFENSE

Claims of the Plaintiff and some members of the putative classes are barred in whole or in party by the doctrines of payment, accord and satisfaction, recoupment, set-off, and/or election of remedies.

## FOURTEENTH DEFENSE

The breach of contract claims of any member of the putative classes who did not pay a premium for the alleged coverage for which they seek to recover payment fail for lack of consideration.

**FIFTEENTH DEFENSE**

The Amended Complaint fails to allege a claim or conduct for which punitive damages can be recovered. The prayer for punitive damages recovery should therefore be stricken.  Plaintiff has not alleged any facts sufficient to support a finding that Defendant has acted with malice or is guilty of oppression or any other facts sufficient to recover punitive or exemplary damages. Further, punitive damages may not be recovered to the extent they are excessive under the Constitution of the United States or any state law applicable to claims brought by residents of the respective states in which each member of the putative class purchased his or her policy. Further, Defendant at all times has acted in good faith and therefore is not liable for any punitive or exemplary damages.  Additionally, the claim for punitive damages is subject to the provisions and limitations of Fla. Stat. § 768.72 and Fla. Stat. § 768.73.

**SIXTEENTH DEFENSE**

The Amended Complaint, and each purported cause of action alleged therein, is barred by the conduct, actions and inactions of Plaintiff, and/or the persons on whose behalf he purports to bring this action, under the doctrine of ratification.

**SEVENTEENTH DEFENSE**

Plaintiff and/or the persons on whose behalf Plaintiff purports to bring this action have already received the benefit of their bargain.

**EIGHTEENTH DEFENSE**

The Amended Complaint's prayers for declaratory relief are barred because Plaintiff, and the persons on whose behalf Plaintiff purports to bring this action, has or have adequate remedies at law.

## NINETEENTH DEFENSE

With respect to the claims of Plaintiff and/or the putative classes, the terms and conditions imposed with respect to the insurance that is the subject of the Amended Complaint complied with all applicable statutes, regulations, and/or filed rates and policy forms. To the extent that the causes of action advanced in the Amended Complaint challenge the terms contained in policy forms accepted for those terms and conditions, such claims are barred as a matter of law, since among other things, all such claims seek to alter or amend the terms of the filed and accepted forms.

## TWENTIETH DEFENSE

The insurance contract forms at issue in this litigation were approved by and/or filed with the states' insurance regulatory authorities if such approval or filing was required and Defendant has complied with all relevant insurance regulations with regard to the approval and maintenance of those contracts.

## TWENTY-FIRST DEFENSE

The claims advanced in the Amended Complaint by Plaintiff, and/or the persons on whose behalf he purports to bring this action, insofar as they relate to alleged conduct that is subject to the regulatory jurisdiction of one or more regulatory or administrative agencies or bodies, are subject to the exclusive jurisdiction of those regulatory or administrative agencies under the doctrines of primary and/or exclusive jurisdiction. Alternatively, such claims are barred by the absence of any private right of action with regard to conduct submitted to the discretion of a regulatory or administrative agency or body.

## TWENTY-SECOND DEFENSE

State Farm denies that it or any of its agents, principals or representatives breached any duty or obligations allegedly owed to Plaintiff or the persons on whose behalf he purports to bring this action.

## TWENTY-THIRD DEFENSE

The claims of Plaintiff and some members of the putative classes are barred by the doctrines of res judicata, collateral estoppel, waiver or settlement.

## TWENTY-FOURTH DEFENSE

The Amended Complaint, including without limitation Plaintiff's cause of action for Breach of the Covenant of Good Faith and Fair Dealing, fails to state a claim upon which any relief can be granted and should be dismissed.

## TWENTY-FIFTH DEFENSE

Plaintiff and some or all members of the putative class lack standing to bring some or all of the claims set forth in the Amended Complaint because they have not suffered any injury in fact.

## TWENTY-SIXTH DEFENSE

Plaintiff has failed to state a claim for relief for conversion because, among other things, the only source of duty alleged arises from the insurance contracts issued to Ronald Lech III and the economic loss doctrine bars recovery of the purely economic damages alleged. Plaintiff does not have a property interest or other interest in the account value, from which Plaintiff alleges deductions in excess of those contractually permitted were made, that is legally sufficient to support a claim for conversion.

**TWENTY-SEVENTH DEFENSE**

Plaintiff has failed to state a claim for relief for conversion because, among other things, a claim for conversion cannot be based on an alleged overcharge.

**TWENTY-EIGHTH DEFENSE**

Plaintiff, and some of the persons Plaintiff purports to represent, has released the claims set forth in the Amended Complaint.

**TWENTY-NINTH DEFENSE**

As Plaintiff and the putative class members' claims for conversion are based on the same alleged conduct as Plaintiff's and the putative class members' breach of contract claims, Plaintiff and the putative class members cannot recover under both.

**THIRTIETH DEFENSE**

Some or all of Plaintiff's claims and the claims of the persons they purport to represent are barred by the express provisions of those persons' respective insurance contracts, which authorize each of the deductions about which Plaintiff complain.

**THIRTY-FIRST DEFENSE**

Plaintiff, and the other persons they purport to represent, suffered no damages by reason of any act or omission of Defendant.

**THIRTY-SECOND DEFENSE**

None of the causes of action alleged in the Amended Complaint entitle Plaintiff or any person they purport to represent to recover attorney's fees from Defendant as a matter of contract, statute or otherwise.

## DEFENSES RESERVED

State Farm hereby gives notice that it may rely upon other defenses that become available or apparent during the discovery proceedings in this matter, and hereby reserves its right to amend its Amended Answer and to assert any such defenses.

## DEMAND FOR JURY TRIAL

State Farm Life hereby demands a trial by jury of all issues so triable.

Date: March 23, 2021

<div style="margin-left: 40%;">

s/John W. Weihmuller, Esq.
John W. Weihmuller, Esq.
Florida Bar No. 0442577
Brian D. Webb, Esq.
Florida Bar No. 0073989
**Butler Weihmuller Katz Craig LLP**
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602-4327
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Email: jweihmuller@butler.legal
Email:  bwebb@butler.legal

Jeremy A. Root, Esq. (*pro hac vice*)
Todd A. Noteboom, Esq. (*pro hac vice*)
**Stinson LLP**
230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263
Facsimile: (573) 636-6231
Email: jeremy.root@stinson.com
Email: todd.noteboom@stinson.com

Cari K. Dawson (*pro hac vice*)
Tiffany L. Powers (*pro hac vice*)
**Alston & Bird LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000

</div>

Facsimile: (404) 881-7777
Email: Cari.Dawson@alston.com
Email: Tiffany.Powers@alston.com

*Attorneys for Defendant*
*State Farm Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served by electronic notification generated by CM/ECF system on March 23, 2021, on all counsel or parties of record on the Service List below.

s/John W. Weihmuller, Esq.
JOHN W. WEIHMULLER, ESQ.

<u>**SERVICE LIST**</u>

| | |
|---|---|
| **BEDELL, DITTMAR, DEVAULT, PILLANS & COXE**<br>Michael E. Lockamy, Esq.<br>Michael E. Halkitis, Jr., Esq.<br>The Bedell Building<br>101 East Adams Street<br>Jacksonville, FL 32202<br>mel@bedellfirm.com<br>meh@bedellfirm.com<br><br>*Attorneys for Plaintiff* | **HAUSFELD LLP**<br>James J. Pizzirusso, Esq.<br>Nathaniel C. Giddings, Esq.<br>Melinda R. Coolidge, Esq.<br>Kimberly A. Fetsick, Esq.<br>1700 K Street, NW<br>Washington, DC 20006<br>jpizzirusso@hausfeld.com<br>ngiddings@hausfeld.com<br>mcoolidge@hausfeld.com<br><br>*Attorneys for Plaintiff*<br>*Admitted Pro Hac Vice* |
| **KALIEL PLLC**<br>*Sophia Goren Gold, Esq.<br>1875 Connecticut Ave., NW<br>10th Floor<br>Washington, DC 20009<br>sgold@kalielpllc.com<br><br>*Attorney for Plaintiff* | **MITCHELL DeCLERCK**<br>Larry D. Lahman, Esq.<br>Roger L. Ediger, Esq.<br>202 West Broadway Avenue<br>Enid, OK 73701<br>larry.lahman@sbcglobal.net<br>rle@mdpllc.com<br><br>*Attorneys for Plaintiff*<br>*Admitted Pro Hac Vice* |
| **STUEVE SIEGEL HANSON LLP**<br>Ethan M. Lange, Esq.<br><br>*Norman E. Siegel, Esq.<br>460 Nichols Road, Suite 200<br>Kansas City, Missouri 64112<br>Email:  siegel@stuevesiegel.com<br>        lange@stuevesiegel.com<br>*Attorneys for Plaintiff*<br>*Admitted Pro Hac Vice* | **MILLER SCHIRGER LLC**<br>*John J. Schirger, Esq.<br>*Joseph M. Feierabend, Esq.<br>*Matthew W. Lytle, Esq.<br>4520 Main Street<br>Suite 1570<br>Kansas City, MO  64111<br>Email: jschirger@millerschirger.com<br>        jfeierabend@millerschirger.com<br>        mlytle@millerschirger.com<br>*Attorneys for Plaintiff* |

*To be admitted pro hac vice*